**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Southern Division)

| | | |
|---|---|---|
| **ALBA MARTINEZ,** | : | |
| Plaintiff, | : | |
| v. | : | **Civ. No. GLS 24-1566** |
| **WALMART, INC.,** | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Pending before the Court[1] is "Defendant's Motion for Summary Judgment" and the attached memorandum filed by Walmart, Inc. ("Defendant"). (ECF No. 29, "Motion"). Alba Martinez ("Plaintiff") filed "Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment" in response. (ECF No. 36, "Opposition"). Defendant subsequently filed its Reply. (ECF No. 37, "Reply"). Accordingly, briefing on the matter is complete. (ECF Nos. 29, 36, 37). The Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025).

For the reasons set forth below, the Defendant's Motion is **GRANTED**.

## I. BACKGROUND

### A. Procedural Background

On April 30, 2024, Plaintiff filed a Complaint in the Circuit Court for Montgomery County, Maryland, against Defendant, alleging one count of negligence in a premises liability action. ("Complaint") (ECF No. 5). Defendant timely removed the action to this Court. (ECF No. 1). Thereafter, Defendant filed an Answer. (ECF No. 8). Scheduling Orders were entered, discovery

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of this Court to conduct all further proceedings in this case, to include trial, entry of final judgment, and resolution of post-judgment proceedings. (ECF No. 12).

concluded, and summary judgment-related briefing was filed. (ECF Nos. 13, 14, 15, 19, 21, 23, 25, 29–37).

### B. Factual Background[2]

#### 1. Undisputed Facts Related to the Incident[3]

The following facts are undisputed. On May 12, 2023, at approximately 9:00 p.m., Plaintiff arrived at the Walmart store located in Germantown, Maryland, to shop. (Deposition Transcript of Alba Martinez, "Pl. Dep.," JA0002). There is one Walmart security video that captured Plaintiff's fall and the events surrounding it. (ECF No. 38, "Walmart Video," JA0011).

Plaintiff entered the store near the produce section, and she was pushing a shopping cart in front of her. (Pl. Dep., JA0002). Approximately thirty minutes after Plaintiff entered the store, at 9:36 p.m., Walmart store surveillance video shows two individuals (hereinafter "Unknown Shopper 1" and "Unknown Shopper 2") pushing a child in a shopping cart down an aisle between an apparel section and the self-checkout area. (Walmart Video, 01:00:08). Unknown Shopper 1 and Unknown Shopper 2 stop their shopping cart in the aisle. (*Id.*). Only the front of the shopping cart can be seen. (*Id.*). A rack of merchandise obstructs the back of the shopping cart, which contains a child. (*Id.*, 01:00:08–01:00:29). Unknown Shopper 1 and Unknown Shopper 2 browse the apparel nearby while the child remains in the cart. (*Id.*, 01:00:14–01:00:32). After browsing for fourteen seconds, Unknown Shopper 1 returns to the shopping cart, turns it around, and moves towards Unknown Shopper 2. (*Id.*, 01:00:28–01:00:36). Unknown Shopper 2 approaches the shopping cart and squats down to the floor to pick up several small items, alleged to be the spilled

---

[2] The parties submitted a Joint Appendix. (ECF No. 38, "JA"). Defendant's submissions can be found in this range: JA Nos. 0001–22. Plaintiff's submissions can be found in this range: JA Nos. 0023–78. The Court will refer to the documents contained therein as, e.g., JA0001.

[3] The Court views all evidence regarding the incident in the light most favorable to the Plaintiff, the nonmoving party. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

berries on which Plaintiff slipped. (*Id.*, 01:00:40–01:00:48). Unknown Shopper 1 and Unknown Shopper 2 exit the area. (*Id.*, 01:00:48).

Seconds later, another individual ("Unidentified Individual") can be seen moving from left to right down the same aisle that the Unknown Shoppers just left. (*Id.*, 01:00:54).[4] Unidentified Individual is wearing a black hat, surgical mask, and a blue shirt or vest, and he/she can be seen pushing a cart containing a white object. (Walmart Video, 01:00:56). Unidentified Individual is visible for approximately eight seconds. (*Id.*, 01:00:54–01:01:02). Unidentified Individual looks over his/her right shoulder while passing through the area where the Unknown Shoppers spilled the berries. (*Id.*, 01:00:56–01:00:58). Unidentified Individual proceeds to the right, moving down the same aisle, and then disappears from view. (*Id.*, 01:00:58–01:01:02).

Approximately two minutes and thirty-six seconds later, Plaintiff can be seen near the produce section. (*Id.*, 01:03:38). Plaintiff pushes her cart into the aisle between the apparel section and the self-checkout area, precisely where the Unknown Shoppers spilled the berries. (*Id.*, 01:03:38–01:03:46). Plaintiff then slips and falls. (*Id.*, 01:03:46). The area was well lit, Plaintiff had no trouble seeing, and she was looking in front of her when she fell. (Pl. Dep., JA0003). Plaintiff was not looking at the floor while she pushed her cart ahead of her, and she did not see the berries before she fell. (*Id.*). Plaintiff also did not see any Walmart employees before she fell. (Pl. Dep., JA0004).

Another shopper (hereinafter "Unknown Shopper 3") saw Plaintiff fall and approached her after the incident. (Walmart Video, 01:03:49–01:03:58). At some point after Plaintiff fell, a person took photographs of the crushed berries. (JA0012–16). The photographs do not depict where the

[4] *See* Section I.B.2.

berries were located relative to the rest of the items in the area where Plaintiff fell. *See id.* However, the berries can be clearly seen against the tile floor. *See id.*

As Unknown Shopper 3 approaches Plaintiff, another individual—Walmart assistant manager Xavier Moussa-Kambe—can be seen. (Walmart Video, 01:03:50). Mr. Moussa-Kambe approaches the scene of Plaintiff's fall from a perpendicular aisle. (*Id.*, 01:03:50). As Mr. Moussa-Kambe approaches the area where Plaintiff fell, he raises an object to his mouth, which appears to be a "walkie-talkie." (*Id.*, 01:03:52). Mr. Moussa-Kambe approaches Plaintiff and Unknown Shopper 3. (*Id.*, 01:03:51–01:03:59). As Mr. Moussa-Kambe and Unknown Shopper 3 stand near Plaintiff, a small crowd begins to form. (*Id.*, 01:03:59–01:04:07). After she fell, Plaintiff spoke with Mr. Moussa-Kambe and a Spanish-speaking Walmart Associate named Cesar Pastran. Thereafter, Plaintiff left the Walmart store on a stretcher. (Walmart Video, 1:21:47–1:24:55).

2. Undisputed Facts Related to Walmart's Policies

Walmart has a "computer-based learning" system that trains employees on safety standards when they are hired and when retraining is necessary. (Deposition Transcript of Arjan Kasapolli, "Kasapolli Dep.," JA0031).[5] The parties have not provided documentation about Walmart's Policies related to cleaning spills, but several members of the Walmart team have testified about the Policies. (Deposition Transcript of Xavier Moussa-Kambe, "Moussa-Kambe Dep.," JA0006–08; Kasapolli Dep., JA0030–33; Deposition Transcript of Djenabou Sow, "Sow Dep.," JA0058–60). When a Walmart employee sees a spill, they must stand guard over it to prevent slips. (Kasapolli Dep., JA0032). Another associate or manager will get the materials necessary to clean up the spill, depending on the nature of the substance spilled. (*Id.*). If maintenance needs to clean

[5] Kasapolli was not employed at the Germantown Walmart store when Plaintiff was injured. (Kasapolli Dep., JA0026). At the time, he was the manager at the Alexandria, Virginia store, but he is now the manager at the Germantown, Maryland store. (*Id.*).

up the spill, an associate will stand guard over the spill and will either: (1) ask a manager to request maintenance via "walkie-talkie" or (2) send another associate to the customer service area to alert the front-end team lead of the spill. (Sow Dep., JA0054). Every member of the team is on the same channel, and maintenance will respond when paged by a supervisor. (*Id.*). At no point is an employee permitted to leave the spill unattended. (Kasapolli Dep., JA0032; Sow Dep., JA0059).

Walmart has implemented a Towel in Pocket program, where Walmart Associates have small absorbent pads to clean up minor spills. (Kasapolli Dep., JA0031–32). This is a part of Walmart's maintenance initiatives to help prevent slips and falls. (*Id.*).

Walmart store leaders, including the front-end team lead and the assistant manager, also are supposed to conduct a walkthrough at the start of their shifts to ensure that the store is safe for customers. (Moussa-Kambe Dep., JA0007; Sow Dep., JA0054). There is no "checklist" of things to look for during this initial walkthrough; store leaders instead flag issues for maintenance to address as they uncover them. (Sow Dep., JA0055).

3. <u>Disputed Facts</u>

The following facts are allegedly in dispute: (1) whether the Unidentified Individual is in fact a Walmart employee; (2) whether the Unidentified Individual saw the berries on the floor before Plaintiff fell; and (3) whether Mr. Moussa-Kambe knew about the berries on the floor before Plaintiff fell.

*a. Unidentified Individual*

Before Plaintiff fell, she did not see anyone whom she identified as a Walmart employee. However, according to Plaintiff, when she reviewed the Walmart Video she saw the Unidentified Individual, whom she believes is a Walmart employee. (Opposition, pp. 2–3). The record indicates that Walmart employees are generally not allowed to wear head coverings, including hats, unless:

(1) they wear the head covering for religious purposes or (2) they work as a "cart pusher" or an "online digital associate," in which case they are permitted to wear a hat. (Sow Dep., JA0060). Furthermore, Walmart employees are generally required to wear blue vests. (*Id.*). The Walmart Video depicts the Unidentified Individual wearing a blue top, face covering, and a hat and pushing a shopping cart past the berries on the floor of the aisle before Plaintiff falls on the berries. (Walmart Video, 01:00:54–01:01:02).

The record is devoid of any testimony from the Unidentified Individual that she/he is a Walmart employee. (JA0001–78). The record also does not contain evidence that any of the deposed Walmart employees identified Unidentified Individual as a coworker or employee that they supervised. (*Id.*). For instance, Walmart employee Djenabou Sow testified as follows, when Plaintiff asked if she recognized an individual captured on the security camera footage at 01:00:53: "Q: Do you see the individual that I'm referring to? A: Yeah. Q: Are you able to recognize that individual? A: No. Q: So you don't know who he is? A: No. Q: Or she is. And you wouldn't know whether or not he's a Walmart employee? A: No." (Sow Dep., JA0061).

*b. Whether a Walmart Employee Saw the Berries Before Plaintiff Fell*

The video depicts the Unidentified Individual turning his/her head and looking over his/her right shoulder toward the shelves as he/she walks by the area where the Unknown Shoppers spilled the berries. (Walmart Video, 01:00:54–01:01:02).

*c. Whether Walmart Employee Moussa-Kambe Knew the Berries Were on the Floor Before Plaintiff Slipped and Fell*

The Walmart Video shows Mr. Moussa-Kambe raising his "walkie-talkie" to his mouth as he approaches the scene where Plaintiff fell. (Walmart Video, 01:03:52). Mr. Moussa-Kambe appears on the scene roughly ten seconds after Plaintiff slips and falls on the berries. (Walmart Video, 01:03:46–01:03:56).

Mr. Moussa-Kambe testified that he did not see the berries on the floor at any point before Plaintiff fell. (Moussa-Kambe Dep., JA0010). Furthermore, he testified that he did not see any berries on the floor between 8:00 p.m. and 9:00 p.m. when he did his initial walkthrough. (*Id.*).

## II. THE LAW

### A. Summary Judgment Standard

A court must grant a motion for summary judgment if the moving party demonstrates that there is no genuine dispute as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). The burden can be satisfied through the submission of, e.g., deposition transcripts, answers to interrogatories, admissions, declarations, stipulations, and affidavits. Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). However, if the movant is alleging that the plaintiff failed to provide sufficient evidence as to a critical element of their claim, the "burden . . . may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence." *Celotex Corp.*, 477 U.S. at 325.

When considering a motion for summary judgment, courts are generally only allowed to consider evidence that would be admissible at trial. *See Harvey v. Velasquez Contractor, Inc.*, Civ. No. GLS 19-1573, 2020 WL 5628976, at *2 (D. Md. Sep. 21, 2020) (explaining that "to be

entitled to consideration at the summary judgment stage, the evidence supporting the facts set forth by the parties must be such as would be **admissible** in evidence" at trial (emphasis in original) (quoting *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 349 (D. Md. 2011))); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

Courts must construe the facts and documentary materials submitted by the parties in the light most favorable to the party opposing the motion. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). To defeat a motion for summary judgment, the nonmoving party cannot simply rest on allegations averred in its opposition or other brief. *Id.* Rather, the nonmoving party must demonstrate that specific material **facts** exist that give rise to a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 323 (emphasis added); *see also* Fed. R. Civ. P. 56(c)(1) (describing how the nonmoving party can make this demonstration). When video footage clearly depicts the facts, and there is no question of the video's validity, this Court will adopt the video instead of Plaintiff's account where the video "blatantly contradicts" that account to such an extent that "no reasonable jury could believe" Plaintiff's version of the facts. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hupp v. Cook*, 931 F.3d 307, 315 n.3 (4th Cir. 2019) ("To the extent the video depicts material facts of this case, we review those facts as they are depicted in the video."). However, this Court will not reject Plaintiff's version of the facts if the video is unclear or only provides "some support" for Defendant's version. *Witt v. West Virginia State Police*, 633 F.3d 272, 276–77 (4th Cir. 2011).

Summary judgment is inappropriate if sufficient evidence exists from which a reasonable jury may decide in favor of the non-movant. *Anderson*, 477 U.S. at 250. Thus, "in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not

appropriate because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility." *U.S. Equal Emp. Opportunity Comm'n v. Ecology Servs., Inc.*, 447 F. Supp. 3d 420, 437 (D. Md. 2020) (citing *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); and then citing *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002)). However, the "mere existence of a scintilla of evidence in support of the [non-movant]" is insufficient to create an issue of material fact. *Anderson*, 477 U.S. at 248.

**B. Negligence**

Under Maryland law, a negligence claim requires a plaintiff to establish the following elements: (1) that a defendant had a duty to protect the plaintiff from injury; (2) that the defendant breached that duty; (3) that the plaintiff suffered actual loss or injury; and (4) that the loss or injury proximately resulted from the defendant's breach of its duty. *Joseph v. Bozzuto Mgmt. Co.*, 918 A.2d 1230, 1234–35 (Md. Ct. Spec. App. 2007) (citing *Valentine v. On Target*, *Inc.*, 727 A.2d 947, 949 (Md. 1999)). As is relevant in this case, determination of the summary judgment motion directly implicates the first and second elements of negligence.

In Maryland, the duty of care owed by a proprietor of a store to the individuals who enter the premises is predicated upon the legal status of the individual. *Durm v. Walmart, Inc.*, Civ. No. ADC 20-2809, 2021 WL 3930709, at *3 (D. Md. Sept. 2, 2021); *see also Tennant v. Shoppers Food Warehouse Md. Corp.*, 693 A.2d 370, 374 (Md. Ct. Spec. App. 1997). The highest duty is owed to an invitee, someone who is invited or permitted on the premises for business purposes. *Tennant*, 693 A.2d at 374. Here, the parties do not dispute that Plaintiff was an invitee. A storekeeper owes a business invitee/customer a duty to use reasonable and ordinary care to maintain its premises "in a reasonably safe condition." *Chamberlain v. Denny's Inc.*, 166 F. Supp. 2d 1064, 1068 (D. Md. 2001).

That being said, a storekeeper is not an insurer of its customers' safety, and "no presumption of negligence arises merely because an injury was sustained on a storekeeper's premises." *Rehn v. Westfield Am.*, 837 A.2d 981, 984 (Md. Ct. Spec. App. 2003) (quoting *Giant Food, Inc. v. Mitchell*, 640 A.2d 1134, 1135 (Md. 1994)). Rather, a storekeeper can be found liable for negligence only if it fails to "observe the duty of ordinary and reasonable care." *Chamberlain*, 166 F. Supp. 2d at 1068. Thus, a customer bears the burden of establishing that the store owner:

> (1) has actual or constructive notice of the hazardous condition;
> (2) should have anticipated that the customer would not discover the condition or would fail to protect herself against it; and
> (3) failed to take reasonable steps to make the premises safe or give adequate warning on the condition.

*Sinnott v. Wal-Mart, Inc.,* Civ No. AMD 99-2494, 2000 WL 33281683, at *2 (D. Md. July 14, 2000) (citing *Gast v. Kitchner*, 234 A.2d 127, 131 (Md. 1967)), *aff'd* 3 F. App'x 128 (4th Cir. 2001); *see also Linderborn v. Armadillo Ventures, LLC*, Civ. No. CCB 19-2532, 2021 WL 322179, at *4 (D. Md. Feb. 1, 2021).

Regarding the first element, it is important to note that, per Maryland law, "there are two distinct notice requirements depending on whether the dangerous condition was created by an overt act of the defendant or by a third party." *Frostbutter v. Bob Evans Farms, Inc.*, Civ. No. CBD 12-2388, 2013 WL 4026985, at *5 (D. Md. Aug. 6, 2013) (citing *Keene v. Arlan's Dep't Store of Baltimore, Inc.*, 370 A.2d 124, 128 (Md. Ct. Spec. App. 1977)). In so-called "over act" cases, "where the defendant [has] intentionally and purposefully created the condition [that] the plaintiff alleges to be unreasonably dangerous," notice is usually not at issue because it is the storeowner who performed an act that created the condition. *Frostbutter*, 2013 WL 4026985, at *5 (citing *Keene*, 370 A.2d at 128); *see also Cheskis v. Safeway, Inc.*, Civ. No. DLB 19-1734, 2021 WL 3852295, at *6 (D. Md. Aug. 27, 2021) (citing *Keene*, 370 A.2d at 128); *Altice v. AMF Bowling*

*Ctrs.*, Civ. No. DKC 06-949, 2007 WL 9782549, at *4 (D. Md. Apr. 13, 2007) (ruling that plaintiff need not provide evidence that defendant had notice of a dangerous condition where evidence existed that defendant created the dangerous condition); *Chamberlain*, 166 F. Supp. 2d at 1068 (finding that plaintiff need not prove notice where proof exists that defendant created the dangerous condition). In these kinds of cases, then, "a defendant can be presumed to have actual knowledge of a condition that it created itself." *Frostbutter*, 2013 WL 4026985, at *5.

Examples of "overt act" cases include: *Tennant,* 693 A.2d at 375 (defendant grocery store employee swept cabbage and spinach into a pile and left an empty box under a display case, both of which plaintiff alleged that she tripped on); *Frostbutter*, 2013 WL 4026985 (storeowner installed a decorative curtain under a sink in its bathroom, which plaintiff alleged that she tripped on); *Cheskis*, 2021 WL 3852295 (a storeowner employed a contractor who newly-waxed the floors followed by an employee who newly-washed the floors, which plaintiff allegedly slipped on immediately thereafter). *See also Taylor v. Wal-Mart Stores E., LP*, No. 22-cv-03366, 2023 WL 6445928 (D. Md. Oct. 3, 2023) (sufficient evidence existed that storeowner's employee "improperly placed" a rubber doormat at the door lip, which plaintiff allegedly slipped and fell on). In these kinds of cases, then, "a defendant can be presumed to have actual knowledge of a condition that it created itself." *Frostbutter*, 2013 WL 4026985, at *5.

Maryland does not recognize a general "mode of operation rule," which would make proprietors liable for negligence when "hazardous conditions will regularly arise" while operating a particular business. *Maans v. Giant of Md., L.L.C.*, 871 A.2d 627, 637–38 (Md. Ct. Spec. App. 2005). Instead, in cases where a third party or a "foreign object," created the hazard, a proprietor can be held liable only if they had actual notice or constructive notice and there was sufficient time to fix the hazard or warn customers. *See Keene*, 370 A.2d at 128.

1. Actual Notice

Actual notice exists in foreign object hazard cases when the proprietor, or their employees, knew of the hazard at the time that the plaintiff's injury occurred. *Rehn*, 837 A.2d at 984–85; *Keene*, 370 A.2d at 126. In *Rehn*, the proprietor had actual notice because an employee knew about the spilled soda for "less than four minutes" before the plaintiff slipped. *Rehn*, 837 A.2d at 984–85. Likewise, in *Keene*, the proprietor had actual notice when a cashier blurted out "I told them if this wasn't cleaned up, someone's going to fall." *Keene*, 370 A.2d at 126. These cases demonstrate what is required for a proprietor to have actual notice: the proprietor or their employee must have some awareness or knowledge of the hazard.

2. Constructive Notice

Contrarily, constructive notice exists when a proprietor could have discovered the hazardous condition by exercising "reasonable care" under the circumstances of the case. *Maans*, 871 A.2d at 632–33 (quoting *Moore v. Am. Stores Co.*, 182 A. 436 (Md. 1936)). In these "foreign substance" cases where constructive notice is at issue, "time on the floor evidence" is typically the most relevant kind of evidence. *See Moulden v. Greenbelt Consumer Servs., Inc.*, 210 A.2d 724, 726 (Md. 1965); *Aska-Abramson v. Wal-Mart Stores E., LP*, 743 F. Supp. 3d 695, 700 (D. Md. 2024) (holding that an employee's proximity to a clear, oily substance 10–15 minutes prior to when plaintiff fell was not enough to establish constructive notice). In such cases, the courts "have been reluctant to conclude that the store owner had notice where it is unclear how long the condition existed and the hazardous condition could have been created by a [third party]." *Rybas v. Riverview Hotel Corp.*, 21 F. Supp. 3d 548, 568 (D. Md. 2014) (quoting *Yates v. Wal-Mart Stores, Inc.*, No. 02-2804, 2004 WL 1083250, at *2 (May 11, 2004)). However, in certain circumstances, the duration that a hazard existed may be immaterial, or it may matter less, if a reasonable jury

could have found that precautionary measures were necessary to prevent the hazardous condition from forming given the nature of the hazardous condition. *See Honolulu Ltd. v. Cain*, 224 A.2d 433, 437–38 (Md. 1966) (holding that summary judgment was inappropriate when a reasonable jury could have determined "that the wet area be salted, as a precaution, before the ice had formed," even though the ice existed for a mere 15–20 minutes before the plaintiff fell).

Put another way, if the dangerous condition existed for a sufficient period of time, such that the defendant had time to inspect the premises and could have discovered the condition by exercising ordinary care, then constructive notice exists. When a plaintiff fails to make a showing about the amount of time that a hazard existed, then they have failed to establish that the defendant had constructive notice. *See Joseph*, 918 A.2d at 1236; *Maans*, 871 A.2d at 634–36. Whether "sufficient time" has passed to impute the proprietor with constructive notice "depends on the circumstances of the particular case." *Deering Woods Condo. Ass'n v. Spoon*, 833 A.2d 17, 24–25 (Md. 2003) (quoting *Moore*, 182 A. 436 (1936)). These circumstances include the nature of the hazard at hand. *See Honolulu Ltd.*, 224 A.2d at 437–38; *Page v. Supervalu, Inc.*, No. 14-1508, 2015 WL 1439572, at *5–6 (D. Md. Mar. 26, 2015). However, "[t]he mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." *Tennant*, 693 A.2d at 374–75 (citations omitted).

3. Time to Redress or Warn

Even when the proprietor has actual or constructive notice of a hazard, the proprietor must have had enough time to do something about that hazard for a plaintiff to establish that the defendant breached their duty. *See Rehn*, 837 A.2d at 984–85; *Keene*, 370 A.2d at 128; *Mitchell v. Target Corp.*, 2019 WL 5309624, at *12–13 (D. Md. Oct. 18, 2019). For example, in *Keene*,

summary judgment was inappropriate because a jury could have found that the defendant had sufficient time to clean up a spill in the checkout line, or at least warn customers of it, when an employee knew about that spill for at least 15 minutes before the plaintiff slipped. *Keene*, 370 A.2d at 128. Contrarily, summary judgment was appropriate when an employee knew about a spill for "less than four minutes" before the plaintiff fell, and she was "'in the act' of notifying her co-worker" when the plaintiff fell, because there was not enough evidence to show that the employee had sufficient time to "redress the danger." *Rehn*, 837 A.2d at 985–86 (stating that any jury conclusion as to the duration of time that the employee was aware of the spill would be based only on impermissible speculation and conjecture). This was, in part, due to uncertainty surrounding the amount of time that the employee was actually aware of the spill. *See id.*

When an employee knows about a hazard for a sufficiently long and certain period of time, there is a question for the jury to determine whether the employee could have done something about the hazard, even if the employee only briefly knew about it. *Daniel v. Moran Foods, LLC*, Civ. No. CBD-17-2693, 2018 WL 3862232, at *3 (D. Md. Aug. 14, 2018) (concluding that a jury could find that the proprietor had enough time to warn customers about a puddle of spilled milk, of which an employee had actual knowledge, when it was undisputed that the puddle had been there for about one and a half minutes).

## III. DISCUSSION

### A. Parties' Arguments

#### 1. Negligence: Actual and Constructive Notice

Defendant contends that the Court should enter summary judgment in its favor for three reasons. First, Defendant argues that it did not have actual or constructive notice of the hazard. (Motion, pp. 7–8, 12–15). Defendant asserts that a third party dropped the berries, and that none

of Defendant's employees were in the area when the customer dropped those berries. (Motion, pp. 7–8). Defendant further claims that there is no evidence to establish that (1) any reports were made to Defendant's employees about the spill or that (2) any of Defendant's employees saw the spilled berries on the ground during the intervening time between when the customer dropped them and the time plaintiff slipped. (*Id.*). Defendant argues that it did not have any constructive notice of the hazard, and that Plaintiff has failed to produce any "time on the floor" evidence to support this argument. (Motion, pp. 12–15). Defendant also argues that any proximity evidence offered by Plaintiff is insufficient to establish either actual or constructive notice. (Motion, pp. 8–12).

Second, Defendant maintains that the berries were not on the ground for an "appreciable amount of time," if they were only on the ground for three minutes. (Motion, p. 16). Defendant argues that a ruling otherwise would effectively impose a requirement to continuously monitor its premises, contrary to Maryland law. (*Id.*).

Third, Defendant claims that its policies and training are sufficient to reasonably maintain the premises. (Motion, p. 17).

Plaintiff first asserts that Defendant had actual notice of the spill. (Opposition, p. 2). In support, Plaintiff claims that the video shows a Walmart Associate clearly observing the spill shortly after the Unknown Shoppers spilled the berries. (*Id.*). Additionally, Plaintiff avers that Mr. Moussa-Kambe had actual notice because he approached the scene while using his "walkie-talkie." (Opposition, p. 3). Relatedly, despite clear policies that instruct Walmart employees to clean spills when able or to stand guard over them and wait for another employee to assist with the cleanup, this employee acted contrary to the policy by walking away from the spill and failing to guard it. (Opposition, pp. 1–3). That is why Walmart breached their duty, according to Plaintiff. (*Id.*).

Defendant replies that Plaintiff's belief that it had actual notice is not supported in the record, and that these beliefs are based solely on conjecture and "mere speculation." (Reply, pp. 1–2). As a result, Defendant claims Plaintiff has failed to establish that there is a genuine dispute of material fact. (*Id.*).

*a. Analysis*

1. <u>Negligence</u>

As a preliminary matter, negligence requires a plaintiff to show (1) that a defendant had a duty to protect the plaintiff from injury; (2) that the defendant breached that duty; (3) that the plaintiff suffered actual loss or injury; and (4) that the loss or injury proximately resulted from the defendant's breach of its duty. *Joseph*, 918 A.2d at 1234–35 (citing *Valentine*, 727 A.2d at 949). Furthermore, in a premises liability case, a customer must show that a proprietor "has actual or constructive notice of the hazardous condition," among other things. *Sinnott*, 2000 WL 33281683, at *2. Whether Walmart had actual or constructive notice is in dispute here.

*i. Overt Act*

There is no evidence that a Walmart employee placed the berries in the aisle. (JA0001–78). The Walmart Video shows two unknown shoppers spilling the berries, and Defendant claims this is when the berries were dropped. (Walmart Video, 01:00:08–01:00:48; Motion, p. 8). In her opposition, Plaintiff does not argue that a Walmart employee put the berries on the floor. *See* (Opposition, pp. 1–6). Because there is no evidence in the record that Defendant placed the berries in the aisle by an overt act, Plaintiff must put forth sufficient evidence that there is a genuine dispute of material fact as to whether Defendant had: (1) actual notice; or (2) constructive notice, in order for her claim to survive summary judgment.

*ii. Actual Notice*

To defeat this motion for summary judgment, Plaintiff can show that Defendant had actual notice because one of Defendant's employees: (1) actually saw the berries or (2) was notified of their presence, and that Defendant had sufficient time to either clean up the spilled berries or warn customers. *See Rehn*, 837 A.2d at 985–86; *Daniel*, 2018 WL 3862232, at *3; Fed. R. Civ. P. 56(c)(1).

Plaintiff first alleges that Unidentified Individual is a Walmart employee, and that this person saw the spill before Plaintiff fell. (Opposition, p. 2). Plaintiff further alleges that the Unidentified Individual walked away from the spill in violation of company policy. (*Id.*). As a result, Plaintiff avers that Walmart breached its duty to Plaintiff to maintain a safe premises. (*Id.*).

This case is distinguishable from *Rehn* and *Keene*. In this case, the Unidentified Individual was never identified or deposed. (JA0001–78). In *Rehn* and *Keene*, it was clear that the individuals involved were employees of the respective stores, and that they had notice of the hazard from their explicit statements. In *Rehn*, the employee stated that a customer notified her that there was a spill on the ground. *Rehn*, 837 A.2d at 984–85. In *Keene*, this could be directly inferred from the cashier's statement which was made contemporaneously with the plaintiff's fall. *Keene*, 370 A.2d at 126.

The Walmart Video depicts Unidentified Individual wearing a blue vest or shirt, in a hat, and pushing a cart while walking by the area where Plaintiff later fell. (Walmart Video, 01:00:54–01:01:02). Plaintiff's version identifies Unidentified Individual as a Walmart employee because their hat matches the hats Walmart employees can wear. (Opposition, p. 3). However, even when construing the evidence in the light most favorable to the Plaintiff, there is no evidence before the Court that Unidentified Individual was identified as a Walmart employee by any supervisor or

coworker. (JA0001–78). Even when construing these facts in the light most favorable to Plaintiff and assuming that the blue top is a vest, the jury would need to speculate further that this individual was employed by Walmart and working at the time. That speculation, likewise, is not permitted. *See Wai Man Tom*, 980 F.3d at 1037 ("conclusory allegations or denials, without more, are insufficient" to allow a party to survive a summary judgment motion); *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 818 (4th Cir. 1995) ("it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture").

Furthermore, the Joint Appendix does not contain any images of Walmart hats, and any jury would be speculating to assume that the hat Unidentified Individual is wearing in the video matches the hats Sow referenced her deposition. *See* (JA0001–78).[6] This speculation is impermissible because the "necessary inference" that the hats match is not rooted in the evidence. *Sylvia Dev. Corp.*, 48 F.3d at 818. As a result, Plaintiff would be asking a jury to conclude that this individual is a Walmart employee merely because they are wearing a blue top.

Furthermore, even if a reasonable jury could conclude that this individual is in fact a Walmart employee based on the video footage—taken together with Ms. Sow's testimony that Walmart employees wear blue vests—there is insufficient evidence before the Court such that a reasonable jury could conclude that Unidentified Individual actually saw the berries or received a report from a customer about the spill.[7] This inference crosses the line even further into the realm of impermissible speculation. *Sylvia Dev. Corp.*, 48 F.3d at 818. Plaintiff provides no evidence

---

[6] Plaintiff argues that the hat the person is wearing matches one identified by Ms. Sow. However, evidence related to that hat is not before this Court, beyond a description of two Walmart hats generally as (1) the "hooding type that for the winter[sic]" and (2) the blue cap that "has the Walmart logo in front of it." (Sow Dep., JA0060).

[7] If Plaintiff could have shown that Unidentified Individual was an employee of Walmart and that they saw the berries, there is enough evidence to send the case to a jury. A reasonable jury could find that Walmart could have either fixed the hazard or warned customers about it, given three minutes of actual knowledge. *See Daniel v. Moran Foods, LLC*, Civ. No. CBD-17-2693, 2018 WL 3862232, at *3 (D. Md. Aug. 14, 2018).

beyond her belief that this employee saw the berries, which is not enough to survive a motion for summary judgment. (JA0001–78).

Plaintiff cannot survive a motion for summary judgment by stacking multiple tenuous inferences together. *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999) ("While a court must draw all reasonable inferences in favor of the non-moving party when ruling on a summary judgment motion, that party may not create a genuine issue of material fact through mere speculation, or building one inference upon another."). By asking this Court to infer that Unidentified Individual (1) is in fact a Walmart employee and (2) saw the berries on the floor, Plaintiff attempts to create a genuine dispute by chaining together speculative inferences. This Court has a duty to keep exactly this kind of speculation away from the jury.

Plaintiff next claims that a Walmart employee saw the spill and breached company policy by leaving it unattended instead of guarding it as required by Walmart. (Opposition, pp. 1–3). As a result, Plaintiff concludes that Walmart breached its duty because its employee had actual notice of a hazard and failed to clean it up or warn customers in violation of that policy. (*Id.*). However, because there is no evidence in the record to suggest that Unidentified Individual was an employee to begin with, a reasonable jury could not find that any Walmart employee had actual notice of the hazard. (JA0001–78). Thus, even when taking the facts in the light most favorable to Plaintiff, no rational jury could conclude that Walmart breached its duty to Plaintiff by violating its policies and its duty of care.

Alternatively, Plaintiff contends that Mr. Moussa-Kambe knew about the spill because he was on his "walkie-talkie" while approaching the area where Plaintiff fell immediately after she slipped. (Reply, pp. 2–3). Even when construing the record in Plaintiff's favor, there is no evidence in the record to support this claim, and this Court finds none. (JA0001–78). A plaintiff's

beliefs and allegations alone are not enough to survive summary judgment, absent evidence to support those beliefs and allegations. *Celotex Corp.*, 477 U.S. at 323. Since the facts and inferences, taken in the light most favorable to Plaintiff, do not establish that any Walmart employee knew about the spill prior to Plaintiff's fall, Plaintiff cannot show that Defendant had actual notice.

*iii. Constructive Notice*

To defeat a motion for summary judgment, Plaintiff can also show that Defendant had constructive notice, if she puts forth evidence of how long the dangerous condition existed, also known as "time on the floor evidence." *Moulden*, 210 A.2d at 726; *Aska-Abramson*, 743 F. Supp. 3d at 700. Additionally, the circumstances surrounding the case must be considered, including the nature of the hazard, when determining if enough time has passed to establish that the proprietor had constructive notice of the hazard. *Deering Woods Condo. Ass'n*, 833 A.2d at 24–25. Here, while there is evidence in the record to indicate how long the berries were on the floor, there is no evidence to indicate that a Walmart employee should have found the berries by exercising due care; thus, Plaintiff cannot establish that Defendant had constructive notice. *See Tennant*, 693 A.2d at 374–75 (citations omitted).

The Walmart Video depicts when the berries were spilled and when Plaintiff slipped. (Walmart Video, 01:00:40–01:03:46). Defendant claims the berries were only on the floor for three minutes and cites to the video, which does not "blatantly contradict" this claim. (Motion, p. 16); *see Scott*, 550 U.S. at 380. Plaintiff does not address time-on-the-floor evidence in her reply. (Reply, pp. 1–6). As such, this Court will consider this fact undisputed for summary judgment purposes. Fed. R. Civ. P. 56(e).

The mere existence of a hazard for three minutes, by itself, is insufficient to establish constructive notice, because this would effectively require a proprietor to continuously monitor their premises for any hazards that a third-party may create. *See Lexington Mkt. Auth. v. Zappala*, 197 A.2d 147, 147 (Md. 1964); *Tennant*, 693 A.2d at 374–75. When a grape was sitting on the ground for at least five minutes, which resulted in a plaintiff's fall, this Court determined that summary judgment in the grocery store defendant's favor was appropriate when considering the circumstances of that case. *Page*, 2015 WL 1439572, at *5–6. The facts of this case are similar, because the berries were only on the ground for a mere few minutes. If this Court were to rule that three minutes on the floor—absent additional evidence about the nature of the hazard—is sufficient for a reasonable jury to find constructive notice, then proprietors would effectively be required to continuously monitor their premises. *See Lexington Mkt. Auth.*, 197 A.2d at 147; *Tennant*, 693 A.2d at 374–75. Even when construing the facts in Plaintiff's favor, no reasonable jury could conclude that Defendant should have discovered the hazard in question, especially when considering the nature of the hazard and the time on the floor evidence, without impermissibly requiring Defendant to continuously monitor its premises. *See Lexington Mkt. Auth.*, 197 A.2d at 147; *Tennant*, 693 A.2d at 374–75.

Taking all facts and reasonable inferences in Plaintiff's favor, Plaintiff has failed to establish that Defendant had any type of notice such that it breached its duty. *See Sinnott*, 2000 WL 33281683, at *2. Plaintiff has not established that a Walmart employee saw the spill and failed to guard it, in violation of company policy, nor has she established that Walmart should have known about the spill because it was a dangerous hazard on the floor for a sufficiently long period of time. Without notice, a reasonable jury could not conclude that Walmart did anything to breach the duty it owed to Plaintiff. Since Plaintiff has failed to allege this essential element of her negligence

claim, no other facts could alter the outcome under the substantive law, which means there is no material fact that is in dispute. *Celotex Corp.*, 477 U.S. at 322–24. As a result, because there was sufficient time for discovery, the Federal Rules of Civil Procedure "mandate[] the entry of summary judgment" in favor of Defendant. *Id.*

2. Contributory Negligence

Instead of raising a claim that the hazard was "open and obvious," Defendant instead brings an affirmative defense of contributory negligence. (Motion, pp. 17–19). Defendant asserts that Plaintiff should have seen the berries, due to the berries' contrasting color against the floor and Plaintiff's unimpaired eyesight. (Motion, p. 18). Defendant argues that Plaintiff must be charged with the knowledge that the berries were on the ground because she failed to see an object that she would have otherwise seen, had she been looking. (*Id.*).

Plaintiff counters that contributory negligence is not appropriate at this stage in the proceedings and should be a question for the jury. (Opposition, pp. 3–4). Specifically, Plaintiff contends that Defendant has failed to point to a "decisive act" that would allow this Court to address contributory negligence on summary judgment. (*Id.*)

Questions of "open and obvious" dangers and contributory negligence are ordinarily reserved for the jury. *See, e.g.*, *Villa v. Lowe's Home Ctrs., LLC*, Civ. No. AAQ 22-1854, 2023 WL 7324268 (D. Md. Nov. 7, 2023). Furthermore, as Plaintiff has presented insufficient evidence to establish a prima facie negligence claim, the Court finds that Defendant's argument that Plaintiff was contributorily negligent is moot. *See, e.g.*, *McCoy v. Transdev Servs., Inc.*, Civ. No. DKC 19-2137, 2022 WL 951996, at *28 (D. Md. Mar. 30, 2022) (finding that "[s]everal remaining affirmative defenses are moot" due to the disposition of a summary judgment motion).

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment, (ECF No. 29), is **GRANTED**.

The Clerk of the Court is directed to close this case.

A separate Order will follow.

Date: August 19, 2026

/s/
The Honorable Gina L. Simms
United States Magistrate Judge